Mr. Shurker we'll hear from you first. Thank you your honor. May it please the court Elliot Shurker on behalf of Michael Gluk. The district court heard in ruling that the SEC findings are inadmissible hearsay and not admissible in this case under rule 8038. Rule 8038 specifically allows for the introduction quote in a civil case or against the government in a criminal case factual findings from a legally authorized investigation. In this circuit it has been established since 1972 before the rules of evidence were adopted that government investigative reports and findings are inadmissible as are admissible as a hearsay exception. The SEC findings are a classic example of admissible governmental findings. The SEC found that Raffle and Applegate What was the reason the district court did not allow the admission of those proceedings? The district court and I'll refer the new trial order which is the clearest explication of the district court's ruling. It's at 9972 of the record quote the court excluded this hearsay opinion evidence as irrelevant and immaterial the opinions of the previous investigators were not admissible and would have served only to tell the jury how they should weigh the substantive evidence introduced at trial. That was the capsulization of the district court's ruling your honor. All right but the I noticed that in the security proceedings that the two primary defendants the defendants in the earlier case that decided to testify against your clients did not testify they took the fifth amendment there correct? They were interviewed by Latham and Watkins during the internal investigation. They did not they did assert the privilege in the SEC. So the SEC uh conclusion was based upon the evidence less their testimony. The SEC's findings were based on all of the documentary evidence that the government introduced at this trial. All of the witness testimony including Mr. Gluck who freely waived the privilege and spoke to both Latham and Watkins and to the SEC and finally on not believing the statements that Raffel and Applegate did make in which they attempted to exculpate themselves. What your honor is saying is that they didn't have Raffel and Applegate's trial testimony in to the extent that they implicated that Raffel and Applegate implicated Baker and Gluck. That's correct but they the SEC had their denials of criminal activity which the SEC did not believe and consequently sued them for securities fraud and then prepared the the factual memos that led to the prosecution of Raffel and Applegate. But our point is exactly that judge. Our point is that in this trial we should have been allowed to introduce presumptively reliable findings and it's very important to note that the government never sought to carry its burden to show that the findings were were unreliable or untrustworthy. Well they say they're preliminary. And they're wrong in saying that judge. These are these are their own at the SEC's own investigator Mr. Etchery and we cite all this in our reply brief. It executed a declaration before trial when the SEC was attempting to quash our subpoena of the SEC in which he said that the findings in the SEC memo in particular the second memo in 2012 were taken directly from the action memos which are the final document the staff prepares for the SEC for the SEC to make a decision to go forward or not. And the only thing that they left out said Mr. Etchery were the opinions of lawyers the privileged information and the district court denied production of the action memos because they were covered by the by work product and attorney-client privilege and the case law scattered as it is among the district court seems to back that up. But the factual findings and judge if you look at the Raffel and Applegate civil complaint if you look at the Raffel and Applegate indictment you'll see that they absolutely replicate everything that is in those those memos factually in those memos they were as final as final can be and the the SEC's argument of sorry the government's argument if I might takes us into a big circle because the government makes an argument that only the final adjudication by an agency should come in under rule 8038. Well 8038 doesn't say that and this court's Moss decision doesn't say that but of course this court has recognized in the Manville decision the EEOC case against Manville that a final adjudication by an agency probably shouldn't come in under rule 403 and contrasted it with the detailed evidentiary findings that this court has held to be admissible because you don't want a jury thinking that another adjudicatory body whether it's a court or an agency has already decided the case there's 403 concerns about that but the detail quote I'm quoting directly from Manville detailed evidentiary findings by an agency charged with doing an are classically admissible they've been admissible in this court since 1972 and this court's 1991 Moss decision in which the court was faced with the with the issue after the supreme court's beach versus raining decision in which the supreme court uh clarified a conflict among the among the circuits and quite notably overruled the cases that the government relied on to convince the district court not to allow the not to allow the SEC findings into evidence what what is the strongest case um on the government side against the introduction of agency findings in proceedings such as this well judge if you permit me to say I don't think the government has a citable case for not allowing these into evidence I didn't see one frankly I mean I but I was just wondering whether they maybe they'd whispered it to you they they rely on O'Keefe this court's O'Keefe decision and that case involves a defendant who didn't know how to say yes when the court ruled that I'll let the Coast Guard reports into evidence I'll let all the findings into evidence but some of the headings seem to be a little too adjudicatory so if you'll agree to redact the headings I'll let the the findings into evidence and the defendant said no and this court said bad choice affirmed and I think that case actually makes Judge Jones helps answer your question as well because this court said we would have allowed the evidentiary findings into evidence if you hadn't made the wrong decision Mr. O'Keefe but we're not going to allow what would what could be seen by the jury as adjudications and Judge Charlie to get back to the original question if I might the the importance of the findings here is as simple as this when the SEC had everything and I repeat everything that the government had plus interviews with with Gluck and Baker it decided it had no basis for charging them with securities fraud it was only after Raffle and Applegate were charged and and handed up Gluck and Baker that the government sought an indictment against Gluck and Baker we should have been allowed to tell the jury that we should have been allowed to tell the jury you can take this stack of evidence over here and all the emails and and whatnot that was introduced in this trial and you can move it to the end of the table in the jury room because the only question the only legitimate question in this trial is whether as to Mr. Gluck I'll let Mr. Reardon speak to Mr. Baker the only question as to Mr. Gluck was when he became CFO in May 2006 when Raffle and Applegate scam had been operating for some considerable period of time and at least since 2005 with DiscoCare and he took the battlefield promotion to CFO did he then join this conspiracy or as he testified and as the SEC specifically found as the SEC specifically found was he misled was he lied to by Raffle and Applegate about what they were doing about whether they legitimately expected to get any money in on the on the channel stuffing operation on whether the marketing fee that became a service fee or the the commission that became a marketing fee that became a service fee was a legitimate operation because remember the outside auditors blessed all of us and Raffle and Applegate's testimony was we lied to the outside auditors as well so the question is did Gluck join a conspiracy or was as the SEC found he was lied to by Raffle and Applegate and we should have been able to introduce the finding that he that the SEC found that he was and consequently didn't sue him for security fraud we should have been able to we should have been able to tell the jury this is only about whether you believe two people who are testifying to get the lightest sentence possible. All right let me ask you for the introduction of that document would it prolong the trial would you have a mini trial within a trial after you cross-examined uh the whoever introduced the document uh about all of the particular findings and the differences between the evidence there and the evidence that was being introduced in this case and so on that you may have had four or five days added to the trial would that have been a factor? Let me first answer that question no and second that the district court never did that kind of balancing the district court believed in his words in the judge's words this was wholly immaterial to the case there was no balancing on what this court considers for example in the Brazos case that we cite to be appropriate balancing assume the maximum probative weight and then look at the prejudicial value for a proper 403 balancing the court said I am not letting this kind of evidence in and the supreme court taught us in the Sprint case that when it's an entire class of evidence that's being excluded it's not 403 balancing and this court in Moss was very careful to charge district courts to be to be very wary of using 403 to exclude presumptively reliable evidence in a trial. Remind me to what extent you are uh this objection also covers the Latham investigative findings? Yes your honor that gets the second part of my answer to Judge Sholley's question if I might use another 30 seconds of time uh to answer that. The SEC was all over this trial the there's a the government told the court uh and at one point during the arguments on judgment of acquittal that we proved an SEC investigation we proved they were looking into who manipulated the prices they they elicited from Raffle that he was investigated by the SEC they elicited from Applegate that he was investigated by the SEC I don't think trial counsel as I said in the in the brief was too engaging in too much hyperbole when they said the jury heard 2,000 times about the SEC and they also heard about Latham the government elicited from from all these witnesses that they were and when we argued that that opened the door the district court said no that we were allowed the grand total of questioning uh John Raffle about his fine that he paid to the SEC because they elicited he paid a fine but the but the investigation did not come in so what this jury knew was that there'd been an investigation by Latham there'd been an investigation by SEC and they heard nothing about the results of that of that investigation except that Gluck and Baker had been indicted we said but they would have drawn the exact opposite conclusion and Judge Sholley all that we were going to do was the same thing that the court should have been done in Moss introduce the document it's self-authenticating it doesn't require any witnesses and government investigators can't testify to their opinions we know that from the government's brief so it would have been introducing documentary evidence and since the SEC was all over this trial anyway I don't think it would have made any difference excuse me but what I'm saying is 8038 allows the SEC to come in does it allow the document constituting the Latham findings to come in I'm sorry I wasn't clear no the Latham document is not admissible under 8038 okay it's only admissible in this case because the government opened the door repeatedly at the trial just as it did to the SEC okay okay thank you thank you thank you Mr. Arden we'll hear from you your honors uh Dennis Reardon for uh Appellant Baker I'm going to principally address the public trial claim but I would like to begin by saying explaining why the health care claim the objection and the admission of the health fraud evidence is so important this was not a case where we're arguing insufficiency of the evidence on appeal under Jackson versus Virginia there was certainly evidence that would pass the Jackson test but all of that evidence really comes from at the time during the its proceedings against Raffel and Applegate just before they at the time they pled that it did not have sufficient evidence to indict either Baker or Gluck it's if you extract their testimony from the record the the evidence is legally insufficient to convict either Mr. Baker or Mr. Gluck and that because their credibility was so subject to challenge five years after the fact for the first time when they're indicted they for the first time accused Mr. Baker Mr. Gluck of being aware of the scheme that admittedly they concocted so what the government really needed here and and they made it very clear even at their sentencing that the reason that they had testified was they were hoping right up to the day of sentencing that they would give you be given probation in exchange for their testimony so what the government really needed was a witness who whose credibility was not blemished and that witness was Norman Sanders Dr. Norman Sanders and we can say three things about his testimony one it had nothing to do with channel stuffing or accounting fraud two he was called not as a percipient witness to events but to give his opinions and three those opinions had an immense emotional wallop because what he talked about was saying that Disco Care was a surgery mill an insurance scam it was a criminal enterprise it was outrageous it was bad medicine now jurors might have a hard time working their way through the accounting principles in channel stuffing cases but they sure knew what what the words bad medicine outrageous criminal enterprise meant and that that testimony obviously it was 404b material the government promised that it would deliver announce 404 material give notice of it 30 days before the trial they gave no notice of it in the three 404 notices that they did file of health care in their trial brief they never mentioned on Norman Sanders and the whole effect of this the district court at the day that he unequivocally said this sec reports couldn't come in on the same day said he wouldn't even consider and ask the government to explain the health care fraud evidence so there was no notice of it until Dr. Sanders got on the stand the defense was sandbagged in that respect and the testimony if it had been explicated before trial we submit it would have been clear that this was inadmissible material under 404b because it had to do with health care fraud the defendants weren't charged with that no one has ever been charged with health care fraud as far as the disco care company is concerned there was no limiting instruction uh no there was not your honor no there was not and let me be clear uh that in as a and this is the real where the real impact comes in a case where there isn't a hint of a health care fraud in the indictment there's no mention of uh upcoding or anything dealing with uh surgical procedures the prosecutor gets up and says hey this was a criminal enterprise arthro care was involved along with disco care and health care fraud and shady dealings and makes it and was engaged in health care fraud which was something the defendant wasn't accused of and um and uh you know it's the last thing said objection was made to those comments your honor and and overruled let me turn to a mea culpa i owe the court which is that yesterday we filed a 28 j letter uh uh referencing the first circuit's decision in the negron sastry case that came down after our opening brief was filed uh however we should have found it earlier um we uh gave notice obvious to the the government because we did discover it only in the last 36 hours but it is the case the only case since presley uh that not only is somewhat relevant highly relevant it is virtually the same facts as this case i mean is it not to some degree uh distinguishable i mean here it seems like or maybe i'm wrong about this that it was accidental or not i don't guess it was accidental here i mean it was purposeful i mean they intentionally excluded the family from the void hour here now in the first circuit case uh where it was the was it not the practice of the court to exclude everyone from the board hour well your honor what happened there was a court security officer and it was admitted not at the order of the court not at the order of the deputy marshal who was responsible for order in the courtroom but a court security officer believing that this was the practice of the court excluded the family members here your honor the court security officer did the same thing he went out and he said to these family members uh no the courtroom will be filled with people and and you can come in you know when there's space for you but obviously the practice was the same that court security officer believed that uh family members shouldn't wasn't there in that case a a evidence that it was a long-standing institutional practice of that court to exclude the public from uh board i well your honor the the not here the district court judge in that case made a specific finding that there was no evidence that the practice was put into effect in that particular case and what the first circuit said is regardless of that the court security officer believing in that practice but closed the courtroom um so so it it's extraordinarily analogous in the sense that it's a court security officer and what the first circuit said in finding that that was a plain error case which this case is not in the sense that the attorneys in that case knew about the exclusion but they believed that it was appropriate they weren't aware of the presley case or uh or of the first circuit precedent and they deliberately did not raise an objection and it wasn't raised until appeal was the public generally excluded in this case as well i mean the public everybody but the lawyers excluded in this case or with the other members of the public the general public present for a board hour in this case your honor there is no record there there is no support in the record that anyone other than lawyers connected to the case was in that courtroom during voir dire there's no evidence that no evidentiary hearing was was held in that respect there were affidavits from four lawyers for witnesses including the government's principal witness that they were in the courtroom but there was no evidence that a member of the public was in the courtroom and the record is clear that the family members specifically who enjoy elevated status under oliver and under negron so street but were excluded and i'm sorry well when you you're out of time and when you get up for rebuttal um i might be interested in the forfeiture issue yes your honor okay we'll now hear from the government mr palatere terrier may it please the court john palatere from the department of justice on behalf of the united states i'll start first with the public trial issue and the first circuit case that was just brought up i think the court hit upon the important distinctions in that there was a unique circumstances in the puerto rico courts where there was a long-standing practice of excluding the public from voir dire and the court the record in that case showed or at least suggested strongly suggested that the district court either knew or was aware of that practice and didn't do anything to stop it and in the light of a prior first say so i mean the opinion does not explicitly say that though does it it doesn't say that the court knew about it but it doesn't i mean it doesn't indicate that it was an intentional or to exclude the public from border i think the evidence that the that the court of appeals uh cataloged established that it was a long-standing practice to intentionally exclude the public from voir dire and that the what is your what is your response here i mean clearly the family was excluded from board are right yes but it was not you admit that they should have been there and there's no other member that the members of the public and at the board are except the lawyers and that's the same situation that was in the first circuit we don't agree that exclusion of the family implicated the sixth amendment it was not a closure of the courtroom here and here's why because the district court made every effort to accommodate the public in this case it added folding chairs 18 folding chairs it reserved a row in the back of the courtroom for members of the public then before the veneer was brought in the court on the record surveyed the courtroom and and saw observed that there were he observed six individuals one of whom was a marshal and said are there room for these five other individuals in the courtroom and the court security officer said yes but one or two are going to have to come up into the well of the courtroom and the court said great and he said to the lawyers you know i'm sorry but there's just very tight room in these courthouses and then when the veneer came in the courtroom was totally full that's a factual finding by the district court that's not clearly erroneous and it's not suggested that it's clearly erroneous that there was no additional capacity for anyone else and true the family members were not there but there were at least five additional members of the public were there four of whom were lawyers for witnesses they weren't lawyers for the parties they had no right or authority to be in that courtroom except as members of the public they weren't representing anyone who was testifying they weren't representing any of the parties they were members of the public the courtroom was absolutely full and there was no room for any additional individuals so there was no courtroom closure there's none of the type that triggers the sixth amendment was there courtroom closure in the first circuit excuse me your honor was there a courtroom closure in the first circuit yes because there was no member of the public there no members of the public and no suggestion that there was a lack of space now there there's an issue as to i thought that was clearly the reason for the rule in the first circuit of the puerto rican district court there's nothing on the record because they had no room for further attendance there was there were i think that the practice in the in the puerto rico resulted from the fact that they didn't want people being close to each other similar to presley where they didn't want uh members of family members or and so on kind of close to the veneer but in as in presley there was on the record it is the record established that the district or the trial court could have individuals in the jury box which would have opened a whole half of the courtroom that's not the record in this case where there were individuals in the jury box there were individuals on folding chairs there was a row of the public open individuals in the back i'll turn to the sec memos uh the um i think it's helpful to take a look at the actual documents and if you look at the first memo it's a three-page memo that gives a high level over overview of the underlying facts and it makes no mention of baker and it makes only one mention of uh gluck saying that in one instance in 2007 uh raffle and applegate withheld information from him regarding um revenue being reversed and that was in one instance that the only that's the only opinion regarding gluck in the in either of these memos the second memo is that the only reference to them excuse me is that the only reference yes the only reference to gluck and there are no references to baker in either of the memos the second memo summarizes the misdeeds of john raffle and david applegate they don't purport to be opinions or findings with regard to gluck and baker or any kind of general conclusion as to their culpability well what is what is the jury supposed to infer when they hear that the sec is all over this and the sec is investigating everybody but these gentlemen are not allowed to at least by omission clearly didn't charge them with anything it's well established your honor and we cite the case in the eighth circuit that collects the cases that charging decisions are generally excludable as as non probative lacking probative value and confusing and misleading the jury but what couldn't a reasonable juror have inferred by the fact that these memos said nothing about baker and gluck that they didn't intend that they didn't find anything about baker it's the dog that didn't bark it's a highly attenuated uh inference and it's outweighed by the other factors which are that this is not a helpful opinion it's a very limited opinion but that is not what the district court did he said they were irrelevant and immaterial he did not conduct any kind of balance in our view the most reasonable common sense did the district court conduct any kind of balancing in our view the reasoning of the district court is best understood as 403 balancing and that's because we in our in limine motion cited 403 as a basis for excluding this we didn't cite 401 and that is the general tenor of what happened here when he talked to yes he said immaterial he and that was hyperbole but it best understood as weighing as as evaluating the probative value and they do have a very little probative value they were uh preliminary findings of one courtesy to the department of justice and they were without benefit of uh of testimony from raffle and applegate and they're very limited in terms of their findings with respect to either baker or gluck and courts regularly well let me i'm just i just go out again there are findings and there are no findings with regard to the top two officers of the company and yet the jury was well aware that a lengthy sec investigation had been conducted yes and it would have it would it's more confusing than edifying to know that and they did have i don't understand that i mean if i'm a real i mean you can argue that but aren't they entitled to argue the contrary look the sec has been over this for years and there's nothing in here about us but they were able to argue that and they did that we needed that the the testimony of applegate and raffle were the lynchpin of this case they went they hammered it over and over again in closing they had a huge opportunity to cross examine these witnesses and all this was in front of the jury the jury was aware of all of these issues but the and the jury had all of the information and more willing to take the position that sec findings are never admissible because they can confuse the jury it depends on the it's going to be depend on the context of every case the 403 is very context dependent why would it have misled the jury in this case then because the findings were so de minimis and irrelevant and the court and they find it and the jury had all of the information and more that the sec had and there was no special expertise required even if they had been introduced it would not have hurt the government's case no and that's a third we believe there are three reasons why this issue does not support you admitting that it was not prejudicial to the government's case we've introduced it and that the question then is simply whether it had any probative value well we're not arguing unfair prejudice as a basis for the 403 balancing we think that the what the dispute but that's what you have essentially conceded it seems to me that it was not prejudicial to the government no we don't say it was and the only thing we have to did it have any probative value at all we don't say that it was unfairly prejudicial in our view it would have been prejudicial in the sense that it would only confuse and misled the jury it's not unfairly prejudicial in the sense that it would have asked the jury to decide the the matter on some improper basis and i think it's helpful to understand that courts regularly exclude opinion evidence of this type when it's not in documents opinion evidence of the sort that says that gives an opinion about findings that the district that the jury is perfectly capable that's what i was asking you because suppose the sec findings had said baker and gluck knew about this if they if they had said that baker and gluck knew about this if for example say jim that would have just as much potential to confuse the jury because then they think the experts had already found them guilty but you would seek to admit that would you not if he if they found that he no we would not seek to admit that and that would be and it wouldn't be it would be excludable if you look at for example why sec never seeks to introduce uh the reports that that it made in criminal proceedings against defendants that have offended the sec laws i don't know about general practice i know in this case if we had asked for example jim etry the staff attorney from the sec to come in and testify and say in your opinion are baker and gluck guilty that would have been excluded and we wouldn't have been able to offer we're talking about findings aren't we in it the question would be whether baker or gluck knew about channel stuffing or whatever their findings in the form of an opinion your honor and so they have to be evaluated findings are findings they say they're findings they are finding and we disagree that they are findings a public agency findings for purposes of 8038 with we think there's three independent reasons for affirming on this ground 403 we think was well within the court's discretion to exclude under 403 and we don't think we we it is hearsay under 8038 because it is not a finding of a public agency this was a memo findings were routinely admissible yes and in those cases they are the finding of an agency they go through a procedure there's a process there's an eeoc process the sec certainly goes through a process before it uh brings charge does your honor and it doesn't include that process doesn't include informal memos sent to main justice it includes a process you can go look at the enforcement manual online how process that was good enough the main justice adopted those findings or whoever filed the complaint against raffle and applegate used those findings we didn't adopt those findings your honor we made up your own we conducted our own investigation as the district court found there was no there wasn't coordination we looked at the documents ourselves but he didn't he didn't find that in connection with the admissibility of the memo all he said was irrelevant in material too bad and he said hearsay your honor so in this is appropriate for in the hearsay government document but whatever well it's a government it's well established that just because something's a written on paper by within a government agency by government but i mean he used that in substitute for an 8038 analysis it was a very perfunctory ruling it was a perfunctory ruling but this is a legal issue whether this is hearsay under 8038 and any evidence that the two witnesses uh rafael and applegate acknowledged that they had been subject to proceedings before the sec and had been determined to have violated the laws and the respects that it came out that they were fined i believe or that raffle received a fine is that all said about it uh i believe that they're he acknowledged and they cross-examined him the district court let them cross-examine him on the fact that he was fined uh by the sec what do you say about the latham and watkins uh well that's a counter report that's well acknowledged that that's hearsay and so the only uh the only thing you open the gate on it right and they refer to the common law of completeness where uh which establishes that if the party offers a um a portion of a writing or a recording then the opposing party may off introduce the other portions or the rest of that recording or writing in order to provide context for the understanding or prevent misunderstanding of the of the portion admitted by the opponent we did not offer any portion of these memos or how did you quote open the door as you've been accused of we did not open the door your honor this in your cases that i've cited in the brief simple testimony about that that uh and refers to some sort of writing does not trigger the common law of completeness under what we said about the writing that the jury heard there i believe that what came out was that raffles and applegate lied to latham and we knew that they were going to cross-examine applegate and late and raffle about prior inconsistent statements and things of that sort lying to investigators and i believe it was only brought up prior to in order to take the sting out and to to bring that up to to front it and say did you lie to latham and they said yes we did lie they acknowledged it um so that was why that was brought up we didn't refer to any findings we didn't rely on latham the latham report there was certainly no portion of the latham report was introduced into evidence and so the door was not opened up into introducing the whole latham report into evidence in this case regarding the uh for the this notion of health care fraud these that evidence was very um very highly relevant to the wire fraud charges in this case the indictment charge that um that disco day evidence this is the disco care evidence yes it seems to me that the same arguments that would have allowed that evidence into trial which it was allowed and it was evidence that fraud was not charged at disco care the government put on proof that there was no fraud charged but yet when the evidence no fraud by these defendants by the sec uh was was produced you you you were able to keep it out and uh it appears to me the same analysis should apply both ways and out of a sense of fairness uh if you're going to allow an uncharged fraud at disco care that you should allow uncharged fraud by the sec we didn't attempt to we didn't need to we didn't want to prove health care fraud in this case that was irrelevant to our to our charges the conduct at disco care was relevant to the wire fraud charges in this case and tell me how i will your honor here's how disco care was a very important component of the arthro care business disco care eventually became its largest customer by revenue and disco care was the uh was the and the story developed that the spine unit was growing very very quickly and the arthro care presented this to the investment community as very important because they wanted to position they wanted to position arthro care as a growth company and that would increase the stock price and all of that growth in the or most of the growth in the spine unit resulted from disco care but they didn't want to disclose the details of how disco care was increasing that revenue and i would i would refer the court to exhibit 198 which really kind of encapsulates this where the david applicant sends an email to michael gluck and they're talking about the stock opening tomorrow and how are they going to react to this 40 percent 46 percent increase in revenue in the spine and then michael gluck says yeah we're all excited there's gonna i'm expecting a big pop in the stock and then he says by the way i will need to become first in detail on disco care and we need to build a story about your newfound success that can stand up to real scrutiny without revealing what is really going on i will be coming to see you to brainstorm this in a couple of weeks and then applegate responds yes i think it is extremely important that you and baker are well versed in the details of disco care and position it consistently with the investment community at the appropriate time while i completely agree with mike that's mike baker that we should keep this under our hat as long as possible we need to be prepared to respond if someone finds out about it while sniffing around now this did come to fruition eventually in december 2006 all of these details about disco care this this no this is is extremely vague this let me mean this could mean that disco care uh did a lot with plaintiff's lawyers it could mean that it had to do with incisions rather than something else um you know it could have to do with channel stuffing you know i mean not all of which are criminal you're on well we're not saying that the that the conduct at disco care was criminal we're saying that they didn't want to disclose it and in fact they didn't want to disclose the fact that their sales force together with disco care was putting together plaintiff's lawyers together with doctors and then they were advising doctor doctors to make incisions and use a different code for open surgery in order to increase the amount of money that they obtained for their products these spine wands almost six thousand dollars instead of thirteen hundred i understand what you're saying but and how much of that could you push on to baker and gluck's knowledge and that's where norman sanders uh comes in now we didn't introduce norman sanders to say that there was that disco care was fraudulent or health care fraud quite to the contrary we presented evidence from norman sanders to show that he told baker and gluck that he had real problems with this personal injury model that was his testimony i thought it was unethical and perhaps fraudulent and i told i was loud and i i would raise a loud voice about this with baker and with gluck they knew my views on that so they had noticed that there were feelings by their chief medical officer about this and problems with it and then when the new york post article came out in december 2007 suggesting that that this was occurring they had an influx of calls from uh analysts and investors saying what's going on here so they had to have a call two calls in january investor calls with specifically to address disco care because it was so important because investors wanted to know i'll refer you to the testimony of alexander nicolau who's a an investor and an analyst who said yeah this was important to me i wanted to know that they were doing this personal injury thing that they were upcoding and he specifically asked are you upcoding he this was off these calls and baker said no we were not upcoding and so they flatly lied they lied on the calls they said no that they're and they lied to analysts and investors relation people in emails and phone calls outside those conference calls okay mr palateri thank you honors and we will um hear from mr rick three three quick points your honor the closing argument by the government the government has just told you that they didn't intend or suggest that this case was about health care fraud the closing argument with the government was that the defendants had chosen to get into business with isidore a convicted felon who ran a criminal enterprise if you have a channel stuffing case with a company that sells motorcycles it might be a dry case you may be able to prove it it helps you a lot if you can say oh but they sold motorcycles to the hell's angels and it helps even more if you can say actually they were part of a criminal enterprise with the hell's angels that isn't what they were charged with um it and the closing argument emphasized that uh that uh they were involved with the business and it was focused on cutting patients none of that was was relevant or needed to prove the uh channel stuffing uh charges i mean you could argue it's a pretty clever strategy because then you just introduce that to poison the well but you don't have to prove it beyond a where no one has ever in from disco care or arthur care ever faced an accusation that there was health care fraud there the government has never had to put that to the test but i mean even so far as the the indictment here is concerned that was based on channel stuffing right there is no mention of health care fraud in the indictment there is no mention of surgery none of that is is in the indictment and none of it was provided as 404 b material in any notice provided by the government so you have the sandbagging aspect of that as well um uh your honor what i would say about the the forfeiture is simply that the court used a very gross method of saying i'm just going to take the the uh the price or the cost at which stocks were sold by mr baker and subtract the purchase price there was no effort to make uh to actually ascertain what would be the only legitimate calculus which is to try and figure out the degree to which that that that net profit included the inflated value of the fraud and the testimony was presented on that we submit that the the method that the court used was extremely simplistic could i just close with one remark which is that the first circuit said we reiterate the ultimate responsibility of avoiding even the appearance that our nation's courtrooms are closed are inaccessible to the public lies with the judge we commend to the sound judgment of the district court the responsibility in the first instance of ensuring both openness and order and above all preserving the defendant's constitutional right to a public trial they found that the district court failed to do that we have a case in which four years after presley the district court's court security officer is telling family members they can't enter into wadir that may not have been by any directive by the district court but it was the district court's responsibility to ensure that those family members were present during the board here thank you very much your honor thank you mr reardon call the next case in the day